## NEAL v. BLECKLEY.

1. MARRIED WOMEN—MORTGAGE—POWER OF SALE.—A married woman joined with her husband during several successive years in executing mortgages, which embraced her land and its rents, together with some personal property and rents of the husband, given, as alleged in the mortgages, for supplies to be advanced to the wife's farm and to another farm controlled by the husband. The advances were not separately charged, and were received by the husband, and payments, derived in part from proceeds of the wife's farm, were credited on the general account. These mortgages authorized a sale by the mortgagees on default of payment. A balance being past due and the powers of sale unrevoked, the mortgagees advertised the wife's land under one of these unpaid mortgages, sold, purchased, and went into possession. Afterwards this married woman brought this action to set aside this sale and for recovery of the land. *Held*, that she was not entitled to such relief.

2. MORTGAGES—ACCOUNTING.—But mortgagees being trustees, she could demand of these mortgagees an accounting, so as to ascertain the balance due on the mortgages.

Before IZLAR, J., Anderson, June, 1890.

This was an action by Sarah C. Neal to have her mortgages of 1883 and 1885 to the defendants, Bleckley, Brown & Fretwell, and a sale of the land thereunder set aside, and for the recovery of the land. Other mortgages had been given by Sarah C. Neal and John B. Neal, her husband, to the defendants, one

of them being dated February 13, 1882, but the terms of these several mortgages were substantially the same. The sale was made under the mortgage of 1883, which contained the following provisions:

We, John B. Neal and Sarah C. Neal, of the county and State aforesaid. send greeting: *Whereas* S Bleckley, E. W. Brown, and J. J. Fretwell, merchants of the city of Anderson, doing business under the name and style of Bleckley, Brown & Fretwell, have already advanced and agreed to advance us from time to time, as we may need them, agricultural supplies. cash, goods, and provisions for ourselves and our tenants, to enable us and them to make a crop for the year 1883. to the amount of seven hundred and fifty ($750) dollars, and for which they hold various liens given by me, the said J. B. Neal. and my tenants on all the crops raised by me and them during the present year. And whereas it may turn out that our accounts and those of our tenants and hands with the said Bleckley, Brown & Fretwell may exceed the amount secured by said liens, and may embrace articles of merchandise not comprised under the legal term of supplies. but which is herein intended to be secured as hereinafter set forth. *And whereas* the said Bleckley. Brown & Fretwell, as agents, have agreed to furnish us fourteen tons of guano, acid and kainit. as set forth in our obligations for the same. And we will not [*sic*] need cash advances and bagging and ties to aid us in gathering, making, and preparing the crops for market in the coming fall.

Now, in order to still better secure the payment of said indebtedness for supplies and goods other than supplies, or advances, and also such indebtedness by account against ourselves or our tenants. and also such indebtedness as may exceed the said sum of $750, and the amount due them as agents for fertilizers and acid and kainit and cash advances and bagging and ties furnished us as above described, and in consideration of the sum of three dollars, to us in hand paid by the said Bleckley, Brown & Fretwell, we, the said J. B. Neal and Sarah C. Neal, do hereby grant, bargain, sell, and release unto the said Bleckley, Brown and Fretwell * * *. And to further secure the payment of said debts, advances, supplies, cash, fertilizers, and all other goods and merchandise referred to or that may be purchased by us jointly or severally, I, the said John B. Neal, do hereby bargain, sell, and deliver to said Bleckley, Brown & Fretwell the following described personal property, viz.: * * * all the rents, issues, and profits of all that tract of land containing six hundred acres of land, situate in the county and State aforesaid, bounded by lands

of W. A. Neal, John Cruise, A. W. Guyton, and others, being the same tract conveyed to me as trustee for my children by A. M. Neal; a large portion of said supplies and fertilizers being advanced for the purpose of making a crop on said farm, as well as on the farm above described; and I, the said Sarah C. Neal, for the further securing the payment of the said debts for advances, supplies, cash, fertilizers, and merchandise bought by us jointly or severally from the said Bleckley, Brown & Fretwell, do hereby bargain, sell, and deliver to them all the crops of corn, cotton, wheat, oats, and all other crops that may be grown on my farm containing 200 acres, as above set forth, for the year 1883.

To have and to hold the said real estate, with all the appurtenances and hereditaments thereunto belonging, or in any wise incident or appertaining, unto the said Bleckley, Brown & Fretwell, their heirs and assigns forever. Provided always nevertheless, and it is the true intent and meaning of this bargain and sale, that if we, the said John B. Neal and Sarah C. Neal, shall well and truly pay or cause to be paid to the said Bleckley, Brown & Fretwell the said sum of $750, and such other debts as contracted by us under this agreement over and above the said sum, should our account and those of our tenants exceed that sum, including goods and cash, as are not included in the term supplies, and also to pay for the fertilizers, acid, and kainit as hereinbefore set forth, when due, then this deed of bargain and sale to be utterly void and of none effect; otherwise to remain in full force and virtue. And should we fail to pay the said sums specified herein, and for all debts contracted with them for goods, merchandise, and cash over and above the said sums, then the said Bleckley, Brown & Fretwell shall have the right to enter our premises and take possession of all the personal property herein conveyed, and apply the proceeds of said sale, after paying the costs and expenses of said sale, to the liquidation of said debts, and return the overplus, if any, to me. But if said proceeds be insufficient to pay off said several debts, sums of money, with all accruing interest and necessary costs and expenses incident to said sale, then I, the said Sarah C. Neal, do hereby give to the said Bleckley, Brown & Fretwell the right, and I do hereby authorize and empower them as my attorneys, to sell and convey all my right, title, and interest in fee of said seventy-five acres of land hereinbefore described and mentioned, without process of law, first advertising the same for three weeks, and selling at public outcry on such terms as they may deem best for the interest of all parties concerned, and out of the proceeds thereof pay the costs and expenses incident to said sale, pay the balance of the debts due them, with the interest thereon, and return-

ing the surplus, if any, to me; at which sale they shall have th right to become purchasers, and execute title deeds necessary to convey the title in fee simple to the purchaser or purchasers.

The Circuit decree, omitting its statement, was as follows:

Without attempting to follow the master's report, or in detail the exceptions thereto, I will briefly state my findings: The plaintiff was a married woman at the time of the execution of all the mortgages set up in this case, and the master erred in ruling out the testimony of plaintiff, showing that no part of the advances made under the mortgage of April 28, 1883, was for the benefit of plaintiff's farm or separate estate; but excluding her individual testimony ruled out by the master, there is still abundant proof, uncontradicted and not excepted to, that no part of the advances made under said mortgage was for her farm or separate estate; while, on the other hand, it is not claimed by said defendants that any of said advances were so used. I therefore hold, as a matter of law, that her said tract of land, being her separate estate, and she being a married woman, is not liable for said mortgage debt, and said mortgage, in so far as it affects her said tract of land, is void. I further hold, that inasmuch as the evidence conclusively shows that the said defendants sold said land under the power and authority conferred upon them in this mortgage of April 28, 1883, that said sale is void, and that plaintiff should be immediately restored to the possession of said tract of land. I further hold, that the lease of said land by Bleckley, Brown & Fretwell to the defendant, Wm. A. Neal, is void.

I further hold, that the sale of the land under the void mortgage of 1883 cannot now be referred to the mortgage of 1882, even were that a subsisting lien on said land. The mortgage of 1882 has, however, by a proper application of the cotton covered by said mortgage and received by the said Bleckley, Brown & Fretwell in the spring of 1883, been more than paid off. The evidence shows that the defendants, Bleckley, Brown & Fretwell, in the years 1884, 1885, and 1886, received from plaintiff's farm more than enough to pay them for all advances made to her tenants during those years, and this I find as a fact; but from the view I take of this case, it matters not whether said mortgages

are or are not paid.   The sale of said land, made on March 7th,
1887, must stand or fall with the mortgage of April 28, 1883,
and as that mortgage, in so far as it affects plaintiff's land, is
void, so is the said sale of said land void.   The power to sell
cannot be uncoupled from the mortgage, of which it is a part,
and I must overrule the master's alienation theory.

I am asked to pass on the validity of the mortgages of '84, '85,
and '86, set up in this case.   This I would not do but for the
fact that there should be an end to litigation, and but for the
further fact that the defendants, Bleckley, Brown & Fretwell,
have relied much on them, and, against objection of plaintiff's
counsel, have insisted on introducing quite an amount of testi-
mony in regard to them.   I find from the evidence, that at the
time of the execution of each of said mortgages, plaintiff was and
still is a married woman, and that the defendants, Bleckley,
Brown & Fretwell, have received for each of those years from
plaintiff's separate estate or farm more than enough to pay them
for all supplies advanced under said mortgages to her tenants for
each of those years, and to reimburse them for the taxes paid for
her, and during those years she received for her separate estate
no other advances from the said defendants.   Therefore, as to
her separate estate or land, the said mortgages are satisfied.

It is therefore adjudged, that the master's report, in so far as
it is in conflict with the views and findings herein expressed, be
and the same is hereby overruled.   It is further ordered, that
the sale of plaintiff's land by defendants, Bleckley, Brown &
Fretwell, on the 7th day of March, 1887, under the mortgage of
April 28, 1883, and the lease of said land by said defendants to
W. A. Neal, be and the same are hereby set aside, and the said
defendants are ordered to restore the possession of said land to
plaintiff at once.   It is further adjudged, that all the mortgages
set up in this case are satisfied, in so far as plaintiff's land is
concerned; and by agreement of counsel in open court, It is or-
dered, that it be referred back to the master to take an account-
ing of the rents and profits of said land since it has been in pos-
session of Bleckley, Brown & Fretwell and their lessee, Wm. A.
Neal.

*Mr. B. F. Whitner*, for appellants.

*Mr. Geo. E. Prince*, contra.

September 7, 1892.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   In the early part of the years 1882, '83, '84, '85, and '86, Sarah C. Neal, a married woman, owning a small separate farm (75 acres), and her husband, John B Neal, holding and controlling another adjoining farm as the trustee of his children, contracted with the defendants, Bleckley, Brown & Fretwell, merchants at Anderson, by their joint notes and mortgages, executed each succeeding year in different amounts for supplies and advances for the two farms, and for other goods and merchandise needed by them.   Each of these mortgages embraced the farm of Mrs. Neal, some personal property of the husband, John B. Neal, and rents of the two places, and each contained a power, delegated to the mortgagees, to sell the land upon default of payment.   Various payments were made upon the successive mortgage debts in each year by proceeds of crops, but, as alleged, none of the debts were fully discharged.

In 1887, the unpaid balances amounting to a considerable sum, the defendants advertised the land of Mrs. Neal for sale under the mortgage of 1883, which represented the largest balance alleged to be still due.   On Saturday preceding the day appointed for the sale, Mrs. Neal presented a complaint to his honor, Judge Fraser, who was holding court in Anderson, to enjoin the advertised sale, and asked for the usual restraining order.   The judge intimating that he would refuse the order, the complaint was withdrawn, and the sale proceeded without any objection and without any attempt at revoking the power of sale contained in the mortgage.   The land was sold at public auction on salesday of March, 1887, and the defendants, through a friend, were the highest and last bidders for the same, who were let into the possession and leased the same as their property.

Matters stood in this condition until 1888, when Mrs. Neal, alleging that no part of the consideration of the mortgages (specifying those of 1883 and 1885), were given for the benefit of

her separate estate, prayed that they might be set aside as to her land, and that the sale and subsequent lease of the premises should be declared void, and demanding an account for rents and damages to shade trees, &c. The defendants denied the allegation as to the alleged want of consideration for the mortgages; alleged that plaintiff and her husband had executed similar mortgages from 1882 to 1886, both inclusive, on all of which balances still remain due, and that they had ample powers under the mortgages to sell, and praying that the complaint be dismissed, &c. All the issues of law and fact were referred to the master, W. W. Humphries, Esq., who held as a matter of fact that there were balances still due on every one of the mortgages, without finding the precise amounts ; and consequently he sustained their validity to charge Mrs. Neal, and recommended that the complaint be dismissed. This report was heard on exceptions by his honor, Judge Izlar, who, holding that the mortgages were invalid as to the land of Mrs. Neal, overruled the master's report and set aside the sale and purchase of the land by the defendants, and ordered an account for rents.

From this decree the defendants, Bleckley, Brown & Fretwell, appeal to this court upon the following grounds: 1. Because his honor erred in holding that the mortgage of 1883, in so far as it affected the land of the plaintiff therein mortgaged, was void; when he should have held that it was made in reference to her separate property in part, and therefore valid, and that she was estopped by the recitals in the mortgage from denying its validity. 2. Because he erred in not holding that from the course of dealing of the parties, the husband being the duly authorized agent of the wife, both in farming her lands and in purchasing and paying for supplies therefor, the defendants could not be prejudiced without express notice of the particular farm for which supplies were furnished. 3. Because he erred in not holding that the power of sale contained in the mortgage was an exercise of the power of alienation, and being unrevoked, when executed was binding upon the plaintiff. 4. Because his honor erred in finding that the mortgages of 1882, 1884, 1885, and 1886 were, or should have been, satisfied by a proper application of receipts from plaintiff's farm for those years, when he should have held

that the plaintiff was bound by the application of credits, as made with the assent of her husband, her agent. 5. Because he erred in not holding that the sale of plaintiff's land, if necessary, might be referred to the power of sale contained in any one or more of the unsatisfied mortgages of defendants, for the years above named, or at least that the plaintiff should be required to account for and pay the balances of said mortgage debts, or of any one of them, and especially the debt of 1882, out of said land, &c. 6. Because his honor erred in awarding rents to the plaintiff.

It will be observed that this is not the ordinary case of a creditor suing a married woman to recover a debt against her, alleged to have been contracted by her with reference to her separate estate; but an action of the reverse character on the part of a married woman, to undo what she had already done, and to set aside a sale which had already been made under her own authority.

Were the notes and mortgages of 1882, '83, '84, '85, and '86, in their inception, absolutely void as to Mrs. Neal, for the lack of power as a married woman to execute them ? We do not think so. To make the matter plain, suppose that Mr. Neal had not joined his wife in the execution of the papers, but she had executed them alone with their statements and recitals—would it not, in that case, be quite certain that the mortgages would not have been void for want of power to execute them ? She was the owner of a separate tract of land, and had the right to obtain the means of farming it by giving an obligation and securing it by a mortgage of her land. This she did five successive times, extending over as many years. It is well settled that "since 1882 a married woman has full power to make any contract with reference to her separate estate, and can, by mortgage or otherwise, subject such estate to liability for the performance of such contract. As to her separate property, she has all the rights to contract that a grown up man of twenty-one years would have." Schmidt v. Dean, 31 S. C., 498; Dial v. Agnew, 28 Id., 460; Fant v. Brown, 29 Id., 598; Greig & Matthews v. Smith, Ibid., 434; Howard v. Kitchens, 31 S. C., 490; and Law v. Lipscomb, Ibid., 504.

Could it alter the case, that the husband of Mrs. Neal, who had charge of another place and needed supplies for that, joined

with her in the obligations and mortgages?—all the successive mortgages reciting as follows: "Whereas, the said firm (B., B. & F.) has already advanced, and has agreed to advance, *us* from time to time, as *we* may need them, agricultural supplies, cash, and provisions for *ourselves,* and *our* hands and tenants, to enable *us* and *them* to make a crop for the year," &c. We cannot see that the joint character of this contract so affected its very existence as to make it absolutely void as to Mrs. Neal, who was a principal as well as her husband. The joint and several nature of the contract was nothing like the attempt to form a copartnership between husband and wife, as in the case of *Gwynn* v. *Gwynn*, 27 S. C., 545. The obligation being joint and several, and John B. Neal the authorized agent of his wife, no separate account was kept by the merchants, designating what advances were made for the farm of Mrs. Neal, as distinguished from those intended for the farm under the control of her husband. The mortgagees were not informed, and could not know, that the recitals of the mortgages were misrepresentations, and Mrs. Neal is estopped from denying them.

Besides, Mr. John B. Neal was the authorized agent of his wife. and conducted most of the business for both places. He made the payments from time to time, and credits were entered by his direction or assent. Yearly statements by the book-keeper as to how the accounts stood were submitted to the Neals, and during the long progress of the business, no objection was made thereto. According to the account thus kept for a series of years, the master reported that in 1887, when the action was brought, there was a balance due on each of the mortgages —the exact amount not stated; and for the payment of these balances, the land was advertised under the power in the mortgages (specifying the one of 1883). As we understand it, Mrs. Neal does not claim that all the mortgages are paid in full, but that, being a married woman, she has the right to disregard the application of payments made by her avowed agent, with a view of limiting her liability for only such advances as can now be shown to have been actually used upon her farm. Mr. John B. Neal was the agent of his wife in this whole business, and she is bound by his acts. It is elementary "that an agent with power to conduct a business, has

authority to do everything necessary and proper and usual in the ordinary course of that business." See *Lamar* v. *Wright*, 31 S. C., 77.

But without going further into that matter now, from the view which the court takes we feel constrained to hold that these proceedings came too late. Five different mortgages, each being a confirmation and substantially a copy of the one preceding it, contained, among other things, the following *power of attorney*: "But if said proceeds be insufficient to pay off said debts with all interest, &c., then I, the said Sarah C. Neal, do hereby give to the said Bleckley, Brown & Fretwell the right, and I do hereby authorize and empower them as *my attorneys, to sell and convey all my right, title, and interest* in fee of said land hereinbefore described *without process of law*, first advertising the same for three weeks and selling at public outcry, on such terms as they may deem best for the interest of all parties concerned, and out of the proceeds thereof pay the costs, &c., pay the balance of the debts due them and the Wando Phosphate Company, returning the surplus, if any, to me (Mrs. Neal); at which sale they shall have the right to become the purchasers, &c., and execute title deed necessary to convey the title in fee simple to the purchaser," &c.

None of these powers of attorney were ever revoked by Mrs. Neal, and the mortgagees advertised the land, sold it on March 9, 1887, and at that sale it was bid off by a friend for the defendants, who seem to have been let into the possession, and to have received the rents and profits. If this sale had been made under an order of court in a proceeding to foreclose the mortgages, or any one of them upon which there was a balance due, it is quite clear that the plaintiff would have been estopped from repudiating the whole proceedings and now having them set aside as illegal and void by that kind of estoppel known as "*res adjudicata*." See *Jennings* v. *Harrison*, 33 S. C., 209; *Crenshaw* v. *Julian*, 26 *Id.*, 283; and *Shuford* v. *Shingler*, 30 *Id.*, 612. In this case there was no order of sale by the court, but there was a sale under the *power of attorney* of Mrs. Neal in which she expressly stipulated in advance that if the sale became necessary, it "*should be without process of law.*"

As we understand it, Mrs. Neal had the right to convey her separate estate; she executed to the defendants the powers of attorney before referred to, re-affirmed them from year to year, and finally, through her attorney in fact, she sold her land at public outcry to the highest bidder, and by her deed, through her attorneys, conveyed the same. There is no allegation of fraud in the sale. After the great lapse of time, the acquiescence of the plaintiff, and her sale and conveyance of the land (through her attorneys in fact), is there any principle of law or equity which would justify the court in declaring the whole proceedings void, and ordering the land to be delivered to Mrs. Neal, with right to recover rents and profits? I confess I do not see why the plaintiff should not *be estopped* as well by the sale made with knowledge by her attorney as she would be by a sale made by the order of court or by herself. "A married woman's liability to *be estopped* by her contract is coterminous with her capacity to contract. If the contract is valid, it estops her."

In the view the court takes, Bleckley, Brown & Fretwell are trustees under the powers of sale in the mortgages; and the plaintiff may, if so advised, have an account to ascertain the exact balances, if any, still due on the different mortgage debts.

Subject to this qualification, the judgment of this court is, that the judgment of the Circuit Court be reversed, and the cause remanded to the Circuit for such further proceedings as the parties may be advised, in accordance with the conclusions herein announced.

MR. CHIEF JUSTICE MCIVER concurred in the result for the following reasons: The power of alienation conferred upon a married woman by the terms of the Constitution, being without any limitation or qualification such as that found in the statute as to her power to contract, it seems to me that the plaintiff had full power to sell her separate estate, without regard to the purpose of such sale, or the application to be made of the proceeds, either by herself or by her agent. Having such power to sell, she could lawfully delegate it to another; and this, I think, she did, and hence she cannot impeach such sale except for fraud, which is neither alleged nor proved.

REP.]                    April Term, 1892.

MR. JUSTICE POPE concurred in the result.

Judgment reversed.[1]